**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stillwater Insurance Company,<br><br>                 Plaintiff,<br><br>v.<br><br>Deborah Dunn,<br><br>                 Defendant. | No. CV-14-01829-PHX-DGC<br><br>**ORDER** |

Plaintiff Stillwater Insurance Company seeks a declaratory judgment that coverage is not required under its insurance policy for the injuries that Defendant Deborah Dunn suffered at the hands of Dennis Arnold. Defendant has counterclaimed that, by denying coverage, Plaintiff breached its contract and its covenant of good faith and fair dealing. Plaintiff has moved for summary judgment on all claims (Doc. 27) and the motion is fully briefed. The Court will deny Plaintiff's motion.[1]

**I.     Background.**

On September 23, 2010, Dennis Arnold entered the Greenway Village Cocktail Lounge. He was a regular customer. Deborah Dunn, a bartender, was working that day. At some point, and under disputed circumstances, Arnold's hand made contact with Dunn's breast, causing extensive injuries. Dunn testified about the event at an evidentiary hearing:

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

> I had begun to make four shots. A customer ordered four shots at the end of the bar, so I made four shots. I could only carry three, so I carried three to the end of the bar, and then I came back. The fourth one I was going to take was missing, so I had asked them [Dennis Arnold and another customer] – they were sitting directly in front of me – like, who took that? Where did the shot go?
>
> And they were kind of laughing, so I bent down to make another shot that I needed to take down, and as I was scooping the ice into the container bending forward and grabbed the bottle, he – Dennis had reached over the bar and grabbed my right breast very hard.

Doc. 28-2 at 16; *see also* Docs. 28-1 at 22; 34-2 at 3-4; 43-1 at 4.

In a deposition, Dennis Arnold gave a strikingly different account of what happened:

> Q. Can you tell us, in your own words, what you recall happening?
> A. She had got a breast job, I guess you call it. I don't know what you call it. And she was taking people in the back room showing her new breasts.
>
> Q. And did she show you her breasts?
> A. She did.
>
> Q. And after that, did there come a time when . . . she threw ice at you?
> A. Yeah, when we were coming out of the room, she come [sic] around the corner and we were joking around and she threw some ice at me.
>
> Q. And what, if anything, did you do in response to the ice?
> A. That's when I reached over and gave her a little pinch on the breast.

Doc. 28-2 at 24. Arnold has also described this "little pinch" as an "accidental brush or touching of her breast" (Doc. 34-1 at 8) and a "little . . . grab" (Doc. 28-2 at 27-28). Arnold explained that he reached out his hand to block "some ice or something. We were just joking around." Doc. 34-1 at 6. When asked whether the contact was accidental, Arnold has replied "yes" and "I don't know." Doc. 28-2 at 28-29.

Dunn brought suit against Arnold in September 2012. Doc. 43-1 at 2. She claimed that Arnold's "little pinch" had complicated her recent breast augmentation surgery. *Id.* at 3-5. She had to undergo correction surgery and enter a convalescence period. *Id.* at 5-6. After the surgery, she still experienced pain and was unable to lift heavy objects. *Id.* at 6. In her *pro se* complaint, she listed claims for "Negligence – Willful and Wanton Conduct" and "Intentional Tort – Battery." *Id.* at 6-7.

Arnold had a homeowners' insurance policy that might cover his liability (the "Policy"). Under the Policy, "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' . . . caused by an 'occurrence' to which this coverage applies," the insurance company will both provide a defense and pay up to the "limit of liability for the damages for which an 'insured' is legally liable." Doc. 43-4 at 25. The Policy did not cover injuries "arising out of sexual molestation" by the insured or injuries that were "expected or intended by an 'insured.'" *Id.* at 26-27. Plaintiff Stillwater Insurance Company – also known as Fidelity National Insurance Company – manages the Policy.

Arnold requested that Stillwater defend him in Dunn's lawsuit and indemnify him for whatever liability he might incur. On July 31, 2013, Stillwater denied Arnold's request because Stillwater believed that Arnold's contact with Dunn's breast was not an "occurrence" or accident. Doc. 28-1 at 10. Stillwater also stated that it would refuse Arnold's request because his act was intentional and one of sexual molestation. *Id.* Arnold and Dunn then stipulated to a court-approved judgment of $100,000 and Arnold assigned his rights under the Policy to Dunn. Docs. 28-1 at 5; 28-2 at 2-7. The agreement was that Arnold would not be personally liable for the $100,000 judgment although Dunn could seek to collect that amount from Stillwater. Doc. 28-2 at 2-7. This type of agreement is known in Arizona as a *Damron* agreement. *See Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969); *see also Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 20 & n.1 (Ariz. 2004).

On August 18, 2014, Stillwater filed a complaint against Dunn seeking "a declaratory judgment from this Court that Stillwater has no duty to defend or indemnify, or pay any stipulated judgment arising from, the claims [from Dunn's lawsuit] under the Policy." Doc. 1, ¶ 56.[2] Dunn answered and counterclaimed for breach of contract and

---

[2] The Court has jurisdiction under 28 U.S.C. § 1332: Stillwater is a California corporation with its principal place of business in Florida, Dunn is domiciled in Arizona, and the amount in controversy equals the $100,000 judgment.

breach of the covenant of good faith and fair dealing. Doc. 14 at 7. Stillwater now seeks summary judgment on all claims. Doc. 27.

**II. Legal Standards.**

**A. Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B. Insurance-Contract Interpretation.**

Under Arizona law, insurance contracts are interpreted according to their plain and ordinary meaning. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). "If a clause is susceptible to different constructions, [a court attempts] to discern the meaning of the clause 'by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole.'" *State Farm Mut. Auto. Ins. Co. v. Connolly*, 132 P.3d 1197, 1198 (Ariz. Ct. App. 2006) (quoting *Ohio Cas. Ins. Co. v. Henderson*, 939 P.2d 1337, 1339 (Ariz. 1997)). "If all else fails, and the clause remains ambiguous, the insurance policy will be construed to provide coverage." *Id.* "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any

- 4 -

exclusion." *Keggi*, 13 P.3d at 788.

### III. Clarification of Issues.

Stillwater argues that under the Policy it had neither a duty to defend nor a duty to indemnify Arnold in the underlying lawsuit that Dunn brought against Arnold. These two duties are distinct. "The scope of the duty to defend under an insurance policy can be broader than the scope of the duty to indemnify." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 543 (Ariz. Ct. App. 2007). An insurer generally has a duty to defend when "the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy[.]" *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973) (citation omitted). Nevertheless, the "duty to defend stems from the facts, not the allegations of the complaint. The insurer may conduct a reasonable investigation and refuse to defend based upon the actual rather than alleged facts." *N. Ins. Co. of New York v. Morgan*, 918 P.2d 1051, 1053 (Ariz. Ct. App. 1995). The duty to indemnify is narrower, since it always arises from the established facts and not merely from the alleged facts. *See Lennar Corp.*, 151 P.3d at 543-44.

The Court finds that in this case the analysis of Stillwater's duty to defend and its duty to indemnify is essentially the same. The parties have not based their arguments regarding Stillwater's duty to defend on the allegations of Dunn's state-court complaint.[3] Rather, their arguments focus on what actually happened between Dunn and Arnold and whether it falls within the scope of the Policy's coverage. Therefore, mindful that the duty to defend ultimately "stems from the facts, not the allegations of the complaint," *Morgan*, 918 P.2d at 1053, the Court will address whether, based on what actually happened between Dunn and Arnold, there is a genuine dispute of material fact that Stillwater had a duty to defend and indemnify Arnold.

---

[3] The Court notes that this might be a difficult argument for Stillwater to win. In her original complaint, Dunn stated her version of events and alleged claims of both negligence and battery. Doc. 43-1 at 7. In her proposed second amended complaint, Dunn stated that Arnold "acted in a negligent manner . . . when he reached over the bar and grabbed Plaintiff's . . . left breast[.]" Doc. 43-3 at 5. Thus, the complaints do state claims of bodily injury caused by negligence and these claims would fall within the scope of the Policy's coverage.

1 **IV. Analysis.**

2 Stillwater argues that the Policy did not entitle Arnold to a defense or indemnification because there is no dispute that Arnold's actions were (1) intentional, (2) not accidental and therefore not an "occurrence," and (3) sexual molestation.

**A. Intentional Act.**

Under the Policy, liability coverage does not apply to a bodily injury "which is expected or intended by an 'insured' even if the resulting 'bodily injury' . . . [i]s of a different kind, quality or degree than initially expected or intended." Doc. 43-4 at 26. A two-pronged inquiry is used in Arizona to decide whether a person acted intentionally for purposes of an insurance policy:

> First, intent is determined by looking at the insured's subjective desire to cause harm. An act, even though intentional, must be committed for the purpose of inflicting injury or harm . . . . Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law.

*Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 796 P.2d 463, 467-68 (Ariz. 1990) (citations omitted). Furthermore, "where an 'act was intentional and there was either a subjective desire to cause some specific harm (intent) or substantial certainty (expectation) some significant harm would occur, the insured will not be heard to say that the exclusion does not apply because the injury was more severe or different from what was intended.'" *W. Agric. Ins. Co. v. Brown*, 985 P.2d 530, 532 (Ariz. Ct. App. 1998) (quoting *Henderson*, 939 P.2d at 1344). Insurance coverage may not be denied, however, where a person acted intentionally but was "provoked, privileged, or justified in acting." *Henderson*, 939 P.2d at 1344; *see also Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 189-90 (Ariz. 1984).

This case presents a genuine dispute of material fact as to whether Arnold acted intentionally. Dunn has testified that, without provocation, Arnold reached over and grabbed her breast. Doc. 28-2 at 16. Arnold has stated that he "reached over and gave her a little pinch on the breast." Doc. 28-2 at 24. But he has also described this action as

1  "accidental brush or touching of her breast" done in response to Dunn throwing ice at
2  him. Doc. 34-1 at 6-8. If Arnold is sufficiently credible in his testimony, a reasonable
3  jury could conclude that Arnold simply reached out his hands to, as he put it, "block
4  some ice" (Doc. 34-1 at 6) and thereby accidentally touched Dunn's breast. Or the jury
5  could conclude that the touching was intentional, but not for the purpose of inflicting
6  harm or with substantial certainty that harm would result.

7  Stillwater insists that Arnold has admitted to intentionally touching Dunn's breast,
8  pointing to a conversation in which he stated that "I was just joking around a little ice and
9  a little tittie grab . . . ." Doc. 28-2 at 27-28. This statement may suggest that the act was
10 intentional, but it is not wholly inconsistent with Arnold's claim that he accidentally
11 touched Dunn's breast when he reached to block ice Dunn was throwing at him  Nor does
12 the statement admit that Arnold intended to harm Dunn or was substantially certain that
13 harm would result. In short, there is a genuine dispute as to what happened.

14 Stillwater argues that Arnold's intent to harm may be conclusively presumed
15 because his actions were "virtually certain to cause *some* harm." Doc. 27 at 12. "Courts
16 may infer intent as a matter of law where an insured's actions are unprovoked and the
17 primary desire is to injure the victim." *Phoenix Control Sys., Inc.*, 796 P.2d at 468. But
18 there is genuine dispute here as to whether Arnold's action was unprovoked and whether
19 he had a desire to injure Dunn.

20 Finally, Stillwater argues that Arnold's intent to harm may be conclusively
21 presumed because he was engaging in sexual misconduct. The cases cited for this
22 proposition are distinguishable. They involved employers or managers who sexually
23 harassed a female employee by making sexual comments, pressured her to have sex,
24 grabbed her breasts and genitals, and called her at home. *Cont'l Ins. Co. v. McDaniel*,
25 772 P.2d 6 (Ariz. Ct. App. 1988); *N. Ins. Co. of New York v. Morgan*, 918 P.2d 1051
26 (Ariz. Ct. App. 1995); *see also Twin City Fire Ins. Co. v. Doe*, 788 P.2d 121, 123 (Ariz.
27 Ct. App. 1989). In light of the conflicting testimony in this case, whether Arnold
28 intentionally or accidentally touched Dunn is a question the jury must decide.

**B.    "Occurrence."**

Stillwater argues that the Policy does not require coverage because Arnold's touching of Dunn's breast was not an "occurrence."  Under the Policy, "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' . . . caused by an 'occurrence' to which this coverage applies, we will . . . [p]ay up to our limit of liability for the damages for which an 'insured' is legally liable."  Doc. 43-4 at 25.  The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . '[b]odily injury.'"  *Id.* at 11.  Thus, the question is whether Arnold's touching was an accident.

"The plain meaning of the word accident is 'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character,' which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.'"  *Nat'l Fire Ins. Co. of Hartford v. Lewis*, 898 F. Supp. 2d 1132, 1141-42 (D. Ariz. 2012) (quoting *Century Mut. Ins. Co. v. S. Ariz. Aviation, Inc.*, 446 P.2d 490, 492 (Ariz. Ct. App. 1968); *W. Cas. & Surety Co. v. Hays*, 781 P.2d 38, 40 (Ariz. Ct. App.1989)).  As noted, whether Arnold's touching of Dunn was an accident must be decided by the jury.

**C.    Sexual Molestation.**

Stillwater argues that the Policy does not require coverage because Arnold's touching of Dunn's breast was an act of "sexual molestation."  Under the Policy, liability coverage does not apply to bodily injury "arising out of sexual molestation, corporal punishment or physical or mental abuse . . . ."  Doc. 43-4 at 27.  The question here is whether an accidental touching of a woman's breast is an act of sexual molestation.

Citing a string of cases, Stillwater argues that the sexual-molestation exclusion applies even if Arnold's conduct was merely negligent.  The cited cases, however, do not support this proposition.  *See Travelers Indem. Co. of Am. v. Isom*, No. CV-13-00647-PHX-GMS, 2014 WL 1092542 (D. Ariz. Mar. 20, 2014); *Am. Commerce Ins. Co. v.*

*Porto*, 811 A.2d 1185, 1189 (R.I. 2002); *Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co.*, 757 A.2d 1074 (Conn. 2000); *Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607, 609 (E.D.N.C. 2000). These cases address situations in which a child brings suit not only against the child's abuser, but also against another parent or supervisor who negligently failed to prevent the abuse. They hold that when an injury arises from sexual molestation, an insurance policy's exclusion for acts of molestation also excludes coverage for those who negligently failed to prevent the abuse. The cases do not address a situation where the alleged sexual molestation was itself negligent.

The plain language of the insurance policy also does not support Stillwater's argument. The Policy provides coverage for damages incurred by an insured who accidentally causes a "bodily injury" to another. Doc. 43-4 at 11, 25. The Policy does not distinguish between injuries to different parts of the body, nor does it state that coverage is denied when a man accidentally injures a woman's breasts. Denying coverage simply because Arnold may have injured Dunn's breast, as opposed to another part of her body, would make little sense. Therefore, should a jury find Arnold's version of events credible, the Policy's sexual-molestation exclusion would not bar coverage.

**D.     Counterclaims.**

Stillwater moves for summary judgment on Dunn's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. Stillwater's sole argument in this regard is that there can be no breach of contract or bad faith because Stillwater had no duty to defend or indemnify Arnold for his conduct. Because there is a genuine issue as to whether Stillwater has these duties, the Court will deny Stillwater's motion for judgment on the counterclaims.

**V.     Conclusion.**

The Court does not intend to suggest that it finds Arnold's version of events more credible than Dunn's, nor that it minimizes inappropriate touching or molestation. But the Court's task on summary judgment is not to make credibility determinations.

1  Although it may seem unlikely in light of his statement quoted above, a jury may find
2  Arnold's version of events credible.  That is a matter that must be resolved at trial.
3  **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 42) is
4  **denied.**  The Court will set a final pretrial conference by separate order.
5  Dated this 20th day of April, 2015.

David G. Campbell
United States District Judge